IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY BROWN FORD, | No. CIV S-02-1693-DFL-CMK |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATIONS |
| MICHAEL MARTEL, | |
| Defendant. | |
| _____/ | |

   Plaintiff, a state prisoner proceeding pro se and in forma pauperis, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Presently before the court is defendant's motion for summary judgment (Doc. 39).  Plaintiff's motion for reconsideration (Doc. 65) of the court's April 7, 2005, order (Doc. 63) will be addressed, if necessary, by separate order.

**I.  BACKGROUND**

   On December 27, 2000, defendant, as the captain for the C-Facility at the California State Prison – Sacramento, issued a memorandum to all C-Facility staff and inmates regarding operations of the C-Facility.  The memorandum stated that, as a result of weapons-related materials being found in the vicinity where Muslim inmates had just participated in

1

Ramadan services, all Muslim inmates who had participated in Ramadan services, and all inmates celled with such Muslim inmates, would be on lock-down status until further notice.  The lock-down imposed a number of restrictions including: (1) no work or education programs; (2) no time on the exercise yard; (3) no evening programs; (4) no telephone privileges; (5) controlled showers; (6) modified access to medical services; (7) modified access to religious services; and (8) modified access to the legal library.  The modified access to religious services consisted of a Muslim Imam who was made available to inmates in their cells.  A list of all Muslim inmates housed in C-Facility, including plaintiff, was attached to the December 27, 2000, memorandum.

Defendant states in his declaration filed in support of summary judgment that, immediately following the December 27, 2000, lock-down, all of C-Facility was searched for weapons-related materials.  As part of this search, prison officials conducted interviews with C-Facility inmates.  One confidential informant reported to prison officials that a Muslim inmate had taken some pieces of metal in order to attack inmates affiliated with the Southern Hispanics.  After additional weapons-related materials were found, the lock-down instituted on December 27, 2000, for Muslim inmates and those inmates celled with Muslim inmates was expanded on December 29, 2000, to include all inmates housed in C-Facility.

Plaintiff claims that the December 27, 2000, lock-down of Muslim inmates violated his constitutional rights.  Specifically, plaintiff alleges that the initial weapons-related materials were found in the vicinity of the staff area and not where Muslim inmates had recently congregated for Ramadan services.  Plaintiff asserts that defendant lied when he stated in the December 27, 2000, lock-down memorandum that the weapons-related materials had been located in a "Muslim area."  Plaintiff contends that defendant lied in order to deprive him of access to religious services.  Plaintiff also contends that defendant's goal in purportedly fabricating this information was to discourage others from the Muslim faith and to create animosity by the non-Muslim inmates celled with Muslim inmates listed on the December 27, 2000, memorandum.  Plaintiff also alleges that he has been stigmatized as well as subject to heightened scrutiny and

1  harassment by prison officials as a result of the December 27, 2000, lock-down.  Plaintiff's
2  complaint appears to allege that defendant violated his right to free exercise of religion, his right
3  to due process, and his right to equal protection.  Plaintiff seeks declaratory relief, injunctive
4  relief, compensatory damages, and punitive damages.

## II.  APPLICABLE STANDARD

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

3

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On December 11, 2002, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff's complaint appears to allege violations of his rights to free exercise of religion, due process, and equal protection.  Defendant asserts in his motion for summary judgment that there is no genuine issue as to any material fact and that he is entitled to qualified immunity.

**A.      Free Exercise of Religion**

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof.  U.S. Const., amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  The Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives.  Id.; McElyea v. Babbit, 833 F. 2d 196, 197 (9th Cir. 1987).

Prison regulations alleged to infringe on the religious exercise right must be evaluated under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). O'Lone, 382 U.S. at 349; Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's recent decision in City of Boerne v. P.F. Flores, 521 U.S. 507 (1997), invalidated the Religious Freedom Restoration Act and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).  In determining

1  the reasonableness of a challenged restriction on First Amendment rights, the court considers four
2  factors.  Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987) (citing Turner, 482 U.S. at 89-91).
3  First, there must be a valid, rational connection between the prison regulation and the legitimate
4  government interest put forward to justify it, and the governmental objective must itself be a
5  legitimate and neutral one.  Id.  A second consideration is whether alternative means of exercising
6  the right on which the regulation impinges remain open to prison inmates.  Id.  A third
7  consideration is the impact accommodation of the asserted right will have on guards, other
8  inmates, and the allocation of prison resources.  Id.  Finally, the absence of ready alternatives is
9  evidence of the reasonableness of a prison regulation. Id.  "In order to establish a free exercise
10 violation, [plaintiff] must show the defendants burdened the practice of his religion by preventing
11 him from engaging in conduct mandated by his faith."  Freeman, 125 F.3d at 736.

12         In the instant case, plaintiff claims that he was not allowed to attend any religious
13 services during the lock-down period first announced by the December 27, 2000, memorandum,
14 and that this violated his free exercise rights. In support of his motion for summary judgment,
15 defendant has presented evidence that chaplains were made available to the C-Facility inmates on
16 lock-down.  Specifically, defendant has presented evidence that, because the lock-down occurred
17 during the Ramadan observance period, a Muslim Imam was made available to the Muslim
18 inmates.  Defendant states that the Imam was asked whether other accommodations should be
19 made in light of the Ramadan observance and that the Imam did not suggest any.

20         Based on the foregoing, defendant concludes that plaintiff was not prevented from
21 engaging in religious practices mandated by his faith and, therefore, that summary judgment on
22 this claim is appropriate.  The court agrees.  In short, the court finds that plaintiff was not
23 prevented from engaging in mandated religious activity because the Muslim Imam did not
24 suggest any accommodations beyond providing a chaplain to inmates on lock-down.  As to
25 plaintiff's contention that the lock-down made it impossible for him and other Muslim inmates to
26 participate in congregational prayer as required by the Muslim faith, plaintiff has failed to offer

any credible evidence that congregational prayer is required or, if it is required, that a temporary inability to participate in congregational prayer violates a central tenet of his religion. To the contrary, defendant has presented evidence that the Muslim Imam, knowing that inmates in C-Facility were on lock-down, did not suggest any accommodations for congregational prayer during the lock-down period.

Defendant is entitled to judgment as a matter of law on plaintiff's free exercise claim.

**B.   Due Process**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to prevail on a claim of deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. The Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). In doing so, the Court held that due process protects inmates from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The Ninth Circuit has also held that prison administrators may confine inmates under greater security pending an investigation into rules violations. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

Plaintiff appears to claim that he was denied due process because there was no opportunity to be heard prior to the lock-down. This claim must fail as a matter of law because, as the Ninth Circuit held in Cato, placing an inmate under increased security pending a rules violation investigation does not violate due process. Put simply, such increased security is not an "atypical and significant" hardship. Thus, plaintiff cannot establish the existence of a protected liberty interest in the context of the facts alleged in the complaint.

Defendant is entitled to judgment as a matter of law on plaintiff's due process claim.

### C. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). In order to prevail, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (noting that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

The gravamen of plaintiff's equal protection claim is that non-Muslim inmates would not have been locked down under similar circumstances and that this must indicate a discriminatory intent as to Muslim inmates. Plaintiff offers no evidence, however, to support this conclusory contention. In support of his motion for summary judgment, defendant has presented evidence establishing that the initial lock-down focused on Muslim inmates (and those celled with them) not for any discriminatory purpose, but because contraband was found in the vicinity of recent Ramadan services attended by Muslim inmates. Thus, there was a clearly reasonable connection between the contraband (and, therefore, prison safety) and Muslim inmates. Plaintiff has failed to offer any evidence even suggesting that, had weapons-related materials been found in the vicinity of Catholic inmates following a Christmas mass, a similar lock-down would not have been instituted. Moreover, plaintiff has not offered any evidence whatsoever to suggest that defendant initiated the particular lock-down here at issue with the intent to discriminate. Rather, defendant has offered ample evidence to show that the lock-down was related to the legitimate penological interests of security and inmate safety.

Defendant is entitled to judgment as a matter of law on plaintiff's equal protection claim.

### D. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Assuming for the moment that the facts as asserted by plaintiff are true and show that defendant's conduct violated his constitutional rights, the constitutional rights at issue were not "clearly established" in the sense that, in light of the particular facts of this case, defendant could have reasonably known that his conduct violated those rights. Thus, defendant is also entitled to qualified immunity.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment be granted, that judgment be entered accordingly, and that all other pending motions be denied as moot.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   September 14, 2005.

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE